**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ROBERT THOMAS CONRAD,**<br>**AIS# 226791,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| **vs.** | )     **CIVIL ACTION NO.:** <br> )     **1:17-CV-107-WS-N** |
| **JEFFERSON DUNN, et al.,** | ) <br> ) |
| **Defendant.** | ) |

**THIRD[1] SUPPLEMENTAL SPECIAL REPORT**

COMES NOW, **Michael Harrison**, by and through undersigned counsel, and in accordance with this Honorable Court's order (Doc. 92), does hereby submit his Special Report as follows:

**PARTIES**

1.      The Plaintiff, Robert Thomas Conrad, #226791, ("Conrad"), is an Alabama Department of Corrections ("DOC") prisoner, currently incarcerated in the Holman Correctional Facility ("Holman") in Atmore, Alabama.  At all times pertinent to this complaint, Conrad was incarcerated at Holman.

2.      MICHAEL HARRISON (Defendant) – formerly employed by the Alabama Department of Corrections (ADOC) and a member of the CERT team. (**EXHIBIT YY**)

---

[1] Said supplemental special report is being filed on behalf of Otis Smith and to make supplemental arguments on behalf of the defendants not present at the prison facility on November 9, 2016.

## PLAINTIFF'S ALLEGATIONS

Plaintiff claims that at approximately 6:30 a.m. on November 9, 2016, while still in bed, Plaintiff was awoken by members of the ADOC CERT team entering the dorm swinging their batons/sticks while screaming and yelling out numerous demands, insults and statements." (Doc. 1, p. 6). According to Plaintiff, "at least one hundred of the one hundred and fourteen inmates" assigned to B dorm were asleep when the CERT team entered and "immediately assaulted the inmates like they were animals, without provocation." Id. at 5. Plaintiff contends that even though he was compliant with orders, laying face down with his hands on his head, he was nevertheless "assaulted." Id. at 6. Allegedly, Plaintiff was "hit on the back of the head" and instructed to turn over, and when he did so, a CERT member purportedly said, "he isn't one of them." Id. At that point, Plaintiff was instructed to turn back over so that he was facing his bed. Id.

Allegedly, Plaintiff heard other "residents" of B dorm "screaming and hollering for help" after he was hit. Id. In addition to being "assaulted," Plaintiff contends that he was "traumatized, stressed, and depressed" due to "such unnecessary use of force, therefore leaving me in fear of officers' presence." Id. Furthermore, as the officers exited B dorm, they allegedly made the "threatening statement, 'When we come back we are going to beat some more of yall ass too." Id.

Events that transpired two days earlier, on November 7, 2016, purportedly set the scene for the events of November 9, 2016. On November 7, 2016 "members of the Alabama Department of Corrections and other Correctional Officers

assigned to Holman," entered B dorm to conduct the institutional count. According to Plaintiff, at that time Holman was in a "serious crisis due to the overcrowding conditions" and "the lack of correctional officers." Id. at 5. To cope with the alleged overcrowding, Plaintiff noted that inmates created "makeshift tents" to gain privacy, however the officers instructed that the tents be removed when they entered B dorm on November 7, 2016. Id. Plaintiff contends that while the inmates were removing the tents, one of the CERT members "aggressively broke a stick from off an inmate bed," resulting in a tense and "brief stillness" as the intuitional count was conducted. Id.

For relief, Plaintiff demands "$200,000 against each liable Defendant; compensatory, punitive, declaratory and injunctive relief; trial by jury; state law claims of assault and battery; slander; harassment and such other relief as the law and this court deem just." Id. at 16.

## DEFENDANTS' EXHIBITS[2]

| 1. | Exhibit A – | ADOC Incident Report dated November 9, 2016; |
| 2. | Exhibit B – | Use of Force Investigative Report dated November 9, 2016; |
| 3. | Exhibit C – | Duty Officer Report dated November 9, 2016; |
| 4. | Exhibit D – | Affidavit of Phillip Mitchell; |
| 5. | Exhibit E – | Affidavit of Darryl Fails; |
| 6. | Exhibit F – | Affidavit of Jesse Stanford; |

[2] Exhibits A-Z filed with the first Special Report (**Doc. 39**), those Exhibits AA through RR which were filed with the supplemental Special Report (**Doc. 64**), those exhibits filed with the Second Supplemental Special Report (**Doc. 89**), and the exhibits filed as part of document 102, are hereby incorporated by reference as if attached herein.

| 7. | Exhibit G – | Affidavit of Steve Terry; |
| 8. | Exhibit H – | Affidavit of David Dennis; |
| 9. | Exhibit I – | Affidavit of DeJour Knight; |
| 10 | Exhibit J – | Affidavit of James Griffin; |
| 11. | Exhibit K – | Affidavit of Dominic Whitley; |
| 12. | Exhibit L – | Affidavit of Bradley Walker; |
| 13. | Exhibit M – | Affidavit of Terry Raybon; |
| 14. | Exhibit N – | Affidavit of Jesse Wilson; |
| 15. | Exhibit O – | Affidavit of Gary Scarbrough; |
| 16. | Exhibit P – | Affidavit of Jermaine Bullard; |
| 17. | Exhibit Q – | Affidavit of Nathan McQuirter; |
| 18. | Exhibit R – | Affidavit of Danny Fountain; |
| 19. | Exhibit S – | Affidavit of William Streeter; |
| 20. | Exhibit T – | Affidavit of Cynthia Stewart; |
| 21. | Exhibit U – | Affidavit of Charles Arthur; |
| 22. | Exhibit V – | Affidavit of Ashley Kidd; |
| 23. | Exhibit W – | Affidavit of Timothy Vignolo; |
| 24. | Exhibit X – | Affidavit of Ernest Duren; |
| 25. | Exhibit Y – | Affidavit of Grantt Culliver; |
| 26. | Exhibit Z – | Redacted Certified Medical Records; |
| 27. | Exhibit AA – | Affidavit of Jeffery Baldwin; |
| 28. | Exhibit BB – | Affidavit of Darryl Brown; |
| 29. | Exhibit CC – | Affidavit of Akeem Edmonds; |

| 30. | Exhibit DD – | Affidavit of Harry Finklea; |
|---|---|---|
| 31. | Exhibit EE – | Affidavit of Demetrives Fleeton; |
| 32. | Exhibit FF – | Affidavit of Anthony Hadley; |
| 33. | Exhibit GG – | Affidavit of Aaron Lewis; |
| 34. | Exhibit HH – | Affidavit of Jasper Luitze; |
| 35. | Exhibit II – | Affidavit of Greggory Patterson; |
| 36. | Exhibit JJ – | Affidavit of Larry McCovery; |
| 37. | Exhibit KK – | Affidavit of Jason Norris; |
| 38. | Exhibit LL – | Affidavit of Alfie Pacheco; |
| 39. | Exhibit MM – | Affidavit of Omar Parker; |
| 40. | Exhibit NN – | Affidavit of John Pryor; |
| 41. | Exhibit OO – | Affidavit of Timothy Robinson; |
| 42. | Exhibit PP – | Affidavit of Samuel Snelson; |
| 43. | Exhibit QQ – | Affidavit of Clifton Sanders; |
| 44. | Exhibit RR – | Affidavit of Cordaro Melton; |
| 45. | Exhibit SS – | Affidavit of Jefferson Dunn; |
| 46. | Exhibit TT – | Affidavit of Marcus Gaston; |
| 47. | Exhibit UU – | Affidavit of Antonio McClain; |
| 48. | Exhibit VV – | Affidavit of Corbin Tunstall; |
| 49. | Exhibit WW – | Affidavit of Teddy Jones; and |
| 50. | Exhibit XX | Affidavit of Otis Smith. |
| 51 | **Exhibit YY** | **Affidavit of Michael Harrison**[3] |

---

[3] Harrison's affidavit shall be provided at a later date.

## STATEMENT OF FACTS

All parties agree that on November 7, 2016, an ADOC Correctional Emergency Response Team (CERT) entered Holman's B dorm and ordered all inmates to remove tied up blankets and sheets from their beds. (Doc. 1, p. 5 and Ex. A). Additionally, all parties agree that two days later, on November 9, 2016, a group of CERT members re-entered B dorm and subsequently instructed all inmates to lay face down on their assigned beds with their hands behind their backs. Id.

According to ADOC records, when CERT members entered B dorm on November 7, 2016, and ordered that all "sticks and tied up blankets[tents]" be removed from the beds in order to take the institutional count, most of inmates refused to comply. (Ex. A). Furthermore, the inmates became increasingly hostile and aggressive towards the CERT members, gathering in an "intimidating and threatening" manner around the officers stating, "This is 2016, and we run this, slavery is over with, we already done killed one of y'all." Id.

The hostility escalated further when an officer, who was taking a clothesline down off an inmate's bed, broke the broom handle that the line was supporting the clothesline. (Ex. N). According to Defendant Jesse Wilson, a correctional sergeant on the CERT team, when inmates in B dorm saw the broom stick break, they began "shouting obscenities and threatening" the officers [and made] numerous graphic "death threats." Id. Conrad noted that after the "stick broke," a "reaction" was elicited from both the "CERT members, correctional

officers present, and the inmates." (Doc. 1, p. 5). Though several unidentified inmates were observed with homemade knives and weapons, the CERT members were able to exit B dorm without further incident.[4] (Ex. A). However, as Sgt. Wilson noted, the officers were still inside the dorm for approximately five minutes, attempting to de-escalate the situation and walk their way out of B dorm "with their lives." (Ex. N). The officers were vastly outnumbered by the inmates, approximately 10:114. Id.

On November 9, 2016, two days following these precursory events, and after an investigation which identified the inmates with weapons during the November 7 incident, CERT members from the North Central, South Central, and Southern CERT teams re-entered B dorm at 6:35 a.m. to arrest the suspects. (Ex. A; Ex. N). While Conrad alleges that eighty (80) CERT members entered the dorm at this time,[5] ADOC records instead report that approximately thirty-nine (39) members were involved.[6] See (Ex. A with Doc. 1, p. 6). Additionally, while Conrad contends (strikingly precisely) that at least one-hundred of the one-hundred and fourteen inmates in B dorm were asleep when the CERT members entered, he also alleges that he himself was asleep at the same time. (Doc. 1, p. 5). As Conrad's complaint corroborates, however, all inmates were given orders to report to their assigned beds, lie down, and place their hands behind their backs. Id. at 6.

---

[4] The inmates in possession of the homemade knives were later identified by the relevant CERT members through IMAS. (Ex. A).

[5] In the previous page of his complaint, Conrad alleged that "over 50" members of the CERT team entered B dorm at this time. See (Doc. 1, p. 5).

[6] The relevant ADOC incident report individually identifies each CERT member involved. (Ex. A).

Despite these orders, approximately thirty-two (32) inmates, not including Conrad, refused to comply with the loud verbal commands.[7]   (Ex. A). Furthermore, during this period of non-compliance, the insubordinate inmates actively made threats toward the CERT members and brandished "knives and broom handles." (Ex. B).  While Conrad contends that the CERT members "came in attacking us [inmates] for no reason at all," ADOC records indicate that CERT members directed force towards the non-complaint inmates as they became openly defiant and threatening.  Compare (Doc. 1, p. 5 with Ex. A).  The force directed towards the select non-complaint inmates, consisted of impact weapons and physical force, and was used in efforts to compel them into acquiescence. (Ex. A). According to the relevant ADOC Use of Force Investigative Report, while the CERT members were armed with intermediate non/lethal impact weapons such as MK-37 rifles, 12-gauge bean bag round shotguns, and 37 mm lethal weapons, none of these weapons were utilized during the incident.  (Ex. B).  Once order was restored to the dorm and the non-complaint inmates were subdued, the inmates subjected to the use of force were promptly arrested and escorted to the Holman Health Care Unit (HCU) where they received medical examinations.  (Ex. A). The CERT team ultimately confiscated 30 handmade knives from B dorm.  Id.

Inmate Conrad was not a suspect and was never implicated in the incident that took place on November 7, 2016.  (Exs. N; P; Q; R; and U).  Likewise, according to Warden Stewart and ADOC records, Conrad had no involvement with members of CERT on November 9, 2016.  (Ex. A and T).

---

[7] All thirty-two non-complaint inmates are identified in ADOC records.  See (Ex. A).

While at least 32 inmate names are listed in either ADOC Incident Report, the Use of Force Investigate Report or the Duty Officer Report, none of the reports list inmate Conrad as a participant of the incident. (See Exs. A; B; and C). Further, there is no indication from any of the named Defendants that any of them directly spoke to and/or touched inmate Conrad, much less punched him in the back of the head as inmate Conrad self-servingly alleges. (Doc. 1; see also Exs. D-Y; AA-RR, TT-VV). ADOC protocol requires that any time force is used by prison officials against an inmate, the inmate be taken to the facilities HCU for assessment. (Ex. D). Additionally, an examination of the inmate and documentation of the examination by medical authority is required after a use of force incident.[8] Id. According to Warden Mitchell, Conrad was not taken to Holman's HCU, nor examined, because he was not part of the incident and no force was used against him. Id. The Defendants specifically state that Conrad was never implicated in the incidents, nor was force used against Conrad at any point during the incidents. (See Exs. I; P; Q; R; S; T; U; X; AA-RR; TT-VV).

As Conrad was not part of the incident on November 9, 2016, Conrad's injury allegations are unsubstantiated and contrary to ADOC records which would show that force was used, or he was injured on the date and time in question. (Exs. A–J; L; and Z). The only medical records available show that inmate Conrad went to the HCU the next day complaining of tenderness in the back of his head, but no objective signs of injury were noted. While inmate Conrad's medical records indicate that he did not receive any injuries, there is also no evidence

---

[8] Additionally, when an inmate refuses an examination, this refusal is also documented on the appropriate medical form and in the incident report. (Ex. D).

whatsoever that inmate Conrad was ever denied or delayed medical and/or nursing attention in November of 2016. (Ex. Z).

## **ARGUMENT**

### **Summary Judgment Standard**

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). The Defendants have the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. See Buskey v. Harsco Corp., 2000 WL 1196158, *1 (S.D. Ala.) citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); and Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Id. citing Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992).

Once movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing. Celotex Corp. v. Catrett, 477 U.S. 323 (1986). Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. Id.

## Eighth Amendment Claim: Excessive Force

The U.S. Supreme Court in <u>Hudson v. McMillian</u> and <u>Whitley v. Albers</u> set the standards under which an Eighth Amendment excessive force claim must be analyzed.   In order to find that the correctional officers' use of force was unconstitutional, Plaintiff must prove that subjectively, Defendants acted maliciously or sadistically to cause Plaintiff harm, and the Plaintiff suffered injury that was objectively harmful enough to establish a constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  The Court considers five factors in making this determination, (1) the extent of the injury suffered; (2) the need for application of force; (3) the relation between the need for force and the amount of force actually used; (4) the threat reasonably perceived; and (5) any efforts to temper the severity of a forceful response.  <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986).

### a.      Subjective Component

In order to establish that the correctional officers acted with a sufficiently culpable state of mind, the Plaintiff must show that force was applied "maliciously and sadistically to cause harm," amounting to an "unnecessary and wanton infliction of pain."  <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986).  On the other hand, if "force was applied in a good faith effort to maintain or restore discipline," then the officers acted correctly and there was no constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

Applying the five <u>Whitley</u> factors to the facts of the case at bar, Conrad cannot show that, subjectively, Defendants acted maliciously or sadistically to cause him harm.  According to ADOC records, Conrad was not involved in any way in the November 9, 2016 incident where force was utilized against 32 identified inmates, nor was he subjected to any force, at any time. (<u>See</u> Exs. A; B; C; I; P; Q; R; S; T; U; X; AA-RR and TT-VV).  Even taken at face-value, Conrad's complaint only contends that he was "hit on the back of the head and told to turn over" while laying in his bed.  (Doc. 1, p. 6).  The extent of the injury suffered by Conrad as a result of an alleged hit to the back of his head was certainly not severe – in fact, he fails to state any injury resulting from the alleged hit.  <u>Id</u>.

Again, even assuming Conrad's allegations are true, the officers' use of force was justified as they were surrounded by more than thirty openly defiant and violent inmates who were threatening their lives and wielding "knives and broom handles."  (Ex. B).  It is clear from the records that the CERT team reported the use of force on at least 32 inmates that day, so if any force was used against inmate Conrad, they would have included his name on the list.  Therefore, it is reasonable to conclude that no force was used against inmate Conrad, or that the amount of force used against Conrad was so insignificant that it was <u>not</u> perceived as a use of force incident by anyone on the CERT team.

As for the amount of force used against the 32 inmates actually involved in the November 9, 2016 incident, the Investigative Report shows that the use of force was both "justified and reasonable."  (Ex. B).  In light of the totality of the

12

circumstances and the immediate threat to the safety of the officers, staff, and inmates, the "minimal amount of force" used by the officers to gain control of the inmates involved in the incident, was necessary.  (Ex. B).  Once the involved inmates (not Conrad) were subdued, all force ceased, and involved inmates were promptly arrested and escorted to Holman's HCU.  (Ex. A).

Because "force was applied in a good faith effort to maintain or restore discipline," the Plaintiff <u>cannot show</u> that the Defendants "act[ed] with a sufficiently culpable state of mind," i.e., that the defendants acted "maliciously and sadistically to cause [him] harm."   Therefore, there can be no constitutional violation.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 7-8 (1992).

### b.    Objective Component.

Even if the Plaintiff could somehow show a subjective component, the claim must still fail as the Plaintiff cannot prove the objective component of the analysis as set out in <u>Hudson</u>.  To prevail, the Plaintiff must also show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.  <u>Id</u>.  Considering the objective element of the excessive use of force claim, Plaintiff states that one of the Defendants hit him in the back of the head.  Plaintiff does not appear to claim any injury caused by any force used, nor was there any objective evidence of injury.  There was no medical examination at the healthcare unit on the day of the incident; in fact, the Plaintiff waited until the following day to be examined at the healthcare unit, and at that time he showed <u>no</u> bruising or swelling.  The Plaintiff presented with subjective

complaints of headaches, dizziness and tenderness and after being given some ibuprofen, the Plaintiff was not seen again for this alleged injury. (See Ex. Z).

Inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Clark v. Johnson, 2000 WL 1568337, *12 (S.D. Ala. 2000) (unpublished) (quoting Hudson, 503 U.S. at 9 – 10). Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Hudson, 503 U.S. at 9 (citations omitted).   The objective component of an Eighth Amendment excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). While the Supreme Court in Hudson did not define "de minimis use of force," it did hold that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim. At the same time, the court suggested that the degree of injury received is relevant to determining whether more than *de minimis* force was used.   See id. at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a de minimis use of force).

In the present case, there is no indication that any force was used against the Conrad.  **Michael Harrison does not recall any force being used on Inmate Conrad. (Exhibit YY)** The evidence refutes the Plaintiff's version of events and

demonstrates that, while some force was used on (32) inmates, there was <u>no</u> force used on the Plaintiff. (<u>See</u> Exs. A; B; C; I; P; Q; R; S; T; U; X; AA-RR and TT-VV). There is nothing tangible to indicate that any force used could reasonably be called repugnant to the conscience of mankind.  Therefore, if the Plaintiff suffered only de minimis injuries from the alleged hit, this is an important factor in determining whether more than *de minimis* force was used.  Assuming, as Plaintiff alleges, that the officers unjustifiably hit his head, his injuries were *de minimis* and simply, do not support his claim that he was subjected to anything other than de minimis force, which is insufficient to establish a constitutional violation under the Eighth Amendment.

### Sovereign Immunity

Conrad has sued Defendants in their official capacity.  Defendants are state officials and are absolutely immune from suit for damages in their official capacities.  <u>Walker-El v. Naphcare Med. Servs., Inc</u>., 432 F.Supp.2d 1264, 1268 (S.D. Ala. 2006) <u>citing</u> <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1277 (11th Cir. 1998).

### Qualified Immunity

Defendants, in their individual capacity, are immune from suit by virtue of qualified immunity.  As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1288 (11th Cir. 1998), <u>quoting</u> <u>Lassiter v.</u>

<u>Alabama A & M Univ. Bd. of Trustees</u>, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).  Because the alleged acts or omissions of the Defendants consist of discretionary functions, and because the actions do not violate any clearly established constitutional or statutory rights, the Defendants are protected by qualified immunity.  <u>Pinkney v. Davis</u>, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity).  The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Wilson</u>, 163 F.3d at 1295.

### Eighth Amendment Claim: Failure to Protect

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." <u>Farmer v. Brennan</u>, 511 U.S. 825, 844–845 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. <u>Id</u>. at 828.

A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1358 (11th Cir.

2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff.  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–527 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990) . . .." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1321 (11th Cir. 2005).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).' " Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014).  "In order to state a §1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation, including one alleging deliberate indifference to an inmate's safety. Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must

first show "an objectively substantial risk of serious harm . . . exist [ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." Marsh v. Butler County, Ala., 268 F.3d 1014, 1028–1029 (11th Cir. 2001), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 837–838 (emphasis added); Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing Farmer, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . .. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Whitley v. Albers, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " Farmer, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991) . . .. Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also "draw that inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.

<u>Carter v. Galloway</u>, 352 F.3d 1346, 1349 (11th Cir. 2003). A Defendant's subjective knowledge of the risk must be specific to that Defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference . . .. Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." <u>Id</u>.

Consequently, to survive the properly supported motion for summary judgment filed by the Defendants, Conrad must first demonstrate an objectively substantial risk of serious harm existed to him and "that the Defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." <u>Johnson v. Boyd</u>, 568 Fed. Appx. 719, 721 (11th Cir. 2014), <u>citing</u> <u>Caldwell</u>, 748 F.3d at 1100. If he establishes these objective elements, Conrad

must then satisfy the subjective component.  To do so, he "must [show] that the Defendants subjectively knew that [he] faced a substantial risk of serious harm. The Defendants must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference."  Id. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. [McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)]. In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear felt by [the][p]laintiff." Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir .2003). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference." Id. at 1349 (quotations omitted).").

Johnston v. Crosby, 135 Fed. Appx. 375, 377 (11th Cir. 2005).

Conrad alleges that the Defendants acted with deliberate indifference to his safety with respect to the incidents of November 9, 2016.  However, it is undisputed that there is absolutely no evidence that Conrad was involved in any altercation, or suffered any injury, at the hands of another inmate or corrections' officials.  Nor is there any allegation that Conrad ever notified anyone of his need for protection.  If Conrad's vague claim refers to the need for protection and/or intervention from one of the Defendants, this claim must also fail as none of the Defendants witnessed any force being used against the Plaintiff. (See Exs. A-Y; AA-RR and TT-VV). As such, Conrad has failed to allege any facts sufficient to support a failure to protect claim.  Summary judgment is proper if the pleadings,

affidavits and documents submitted to the court show that there is no genuine issue of material fact.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

**Eighth Amendment Claim: Failure to Provide Medical Treatment**

Conrad's Eighth Amendment claim as a result of being denied medical treatment at Holman is without merit.   To prevail on his claim, Conrad must prove that he had an objectively serious medical need, and that the officers involved acted with deliberate indifference to that need.   Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005).   Conrad failed to allege any facts that would show he had an objectively serious medical need, or that the officers were deliberately indifferent to that need.

Conrad is not included as a victim or participant in the incident in question on either the official ADOC Incident Report, ADOC's Use of Force Investigate Report, or the relevant Duty Officer Report from Holman.   According to Warden Mitchell, ADOC protocol requires that any time force is used by prison officials against an inmate, the inmate be taken to the Health Care Unit (HCU) for assessment.   (Ex. D).   Additionally, an examination of the inmate and documentation of the examination by medical authority is required after a use of force incident, even if the inmate refuses medical treatment.   Id.   Conrad was not taken to Holman's HCU and examined because he was not part of the incident in question and no force was used against him on November 9, 2016.   Even Conrad himself failed to allege that he suffered any sort of lasting injury; his complaint merely states that he was "hit on the back of the head."   (Doc. 1, p. 6).

Additionally, nowhere in his complaint does Conrad allege that he notified or indicated to ADOC officials that he was injured.  Likewise, there is no evidence that Conrad was ever denied any medical treatment by anyone.  In fact, the only reliable evidence shows that when Conrad complained of injury the following day, he was seen promptly at the healthcare unit.  (Exs. Y and Z).  There is also evidence that Conrad continued to receive medical care on demand for his injured ankle and never mentioned his head injury again.  (See Ex. Z).  Since the Defendants could not have been deliberately indifferent to a medical need of which they were never informed, and the Plaintiff received medical care upon his request, there is no genuine issue of material fact as to the Plaintiff's claims that the defendants were deliberately indifferent to his medical needs.

**All claims against ten (10) of the Defendants are due to be dismissed because they were not present during the search in question or cannot be held liable under a *Respondeat Superior* theory of liability.**

Inmate Conrad has asserted claims of assault and battery, harassment, slander, excessive force, failure to implement procedures used, and failure to protect claims against (1) Jefferson Dunn, (2) Grantt Culliver, (3) Cynthia Stewart, (4) Terry Raybon, (5) Phillip Mitchell, (6) Ashley Kidd, (7) Gary Scarbrough, (8) Timothy Vignolo, (9) Darryl Fails and (10) Otis Smith.  The claims against the aforementioned Defendants are due to be dismissed because they <u>were not present</u> at the time of the search or cannot be held liable under a respondeat superior theory of liability.

A.    *Jefferson Dunn*

Jefferson Dunn is the current Commissioner of the ADOC and was not present during the search.  (**Exhibit SS**)  Any claims against Jefferson Dunn are due to be dismissed because there is no *Respondeat Superior* liability in a §1983 lawsuit. *See* Farrow v. West, 320 F.3d 1235, 1238 (11th Cir. 2003); Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995); Pierce v. Smith, 347 F. Supp. 2d 1143, 1150 (M.D. Ala. 2004).

B.    *Gary Scarbrough*

Gary Scarbrough was not present during the search and was transporting an inmate to the Dothan Eye Clinic on November 9, 2016.  (**Exhibit O**)  All claims against Officer Scarbrough are due to be dismissed because he was not present during the incident in question.

C.    *Ashley Kidd*

During the search, the CERT team commanders were in charge.  (**Exhibit V**)  On the day and time in question, Lieutenant Kidd was assisting in an institutional shakedown of female employees entering the facility and he was also supervising "count."  *See id*.  All claims against Lieutenant Kidd are due to be dismissed because he was not present during the incident in question.

D.    *Terry Raybon*

Warden Raybon did not report to work until 8:00 a.m. on the day in question and was not present during the CERT team search.  (**Exhibit M**)  Warden Raybon is due to be dismissed from the lawsuit because there is no *Respondeat Superior*

liability in a §1983 lawsuit.  *See* <u>Farrow,</u> 320 F.3d at 1238; <u>Harris,</u> 65 F.3d at 917; <u>Pierce,</u> 347 F. Supp. 2d at 1150.

### E.  Timothy Vignolo

When the CERT team entered the Holman Correctional Facility, the CERT team commanders oversaw the search of B-Dorm.  (**Exhibit W**)  The CERT team commanders ordered Officer Vignolo to exhibit B-dorm and provide security on the main hall.  *See id.*  All claims against Officer Vignolo are due to be dismissed because he was not present during the incident in question.

### F.  Grantt Culliver

Grantt Culliver was an Associate Commissioner for operations for the ADOC.  (**Exhibit Y**)  Commissioner Culliver was not present at Holman Correctional facility on November 9, 2016.  *See id.*  Commissioner Culliver is due to be dismissed from the lawsuit because there is no *Respondeat Superior* liability in a §1983 lawsuit.  *See* <u>Farrow,</u> 320 F.3d at 1238; <u>Harris,</u> 65 F.3d at 917; <u>Pierce,</u> 347 F. Supp. 2d at 1150.

### G.  Cynthia Stewart

Cynthia Stewart is a Warden at Holman Correctional Facility and was not present during the search in question.  (**Exhibit T**)  Warden Stewart is due to be dismissed from the lawsuit because there is no *Respondeat Superior* liability in a §1983 lawsuit.  *See* <u>Farrow,</u> 320 F.3d at 1238; <u>Harris,</u> 65 F.3d at 917; <u>Pierce,</u> 347 F. Supp. 2d at 1150.

### H.   Phillip Mitchell

Phillip Mitchell is a Correctional Warden I at Holman Correctional Facility.  (**Exhibit D**)  Warden Mitchell was not present during the incident in question.  Warden Mitchell is due to be dismissed from the lawsuit because there is no *Respondeat Superior* liability in a §1983 lawsuit.  *See* <u>Farrow,</u> 320 F.3d at 1238; <u>Harris,</u> 65 F.3d at 917; <u>Pierce,</u> 347 F. Supp. 2d at 1150.

### I.   Darryl Fails

When the CERT team entered the Holman Correctional Facility, the CERT team commanders oversaw the search of B-Dorm. (**Exhibit E**) Once the CERT team entered B-Dorm at Holman Correctional Facility, Fails left the dorm and returned to his office.  *See id.* All claims against Captain Fails are due to be dismissed because he was not present during the incident in question.

### J.   Otis Smith

Otis Smith was not present during the search. Otis Smith is the Commander of the Central CERT team. (**Exhibit XX**)  The Central CERT team was not present during the search of Holman on November 9, 2016. *See id*.

### State Law Claim of Assault and Battery

In addition to his 42 U.S.C.A. § 1983 claims, Conrad has raised a state law claim for assault and battery.  Conrad's 42 U.S.C.A. § 1983 claims lack merit and are due to be dismissed.  Because Conrad's federal claims are due to be dismissed, this Court should decline to exercise jurisdiction over Conrad's state law claim. <u>See</u> <u>Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.</u>, 195 F. App'x 891 (11th

Cir. 2006) ("Because the court had resolved all of [the] federal claims in favor of the defendants, it could choose not to exercise jurisdiction over . . . state law claim[s]."); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004)("We . . . reject Raney's argument that the district court should have exercised supplemental jurisdiction over the remaining state-law claims.  The decision to exercise supplemental jurisdiction over pendent state law claims rests within the discretion of the district court . . ..  We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); see also 28 U.S.C.A. § 1367(c)(3) (The district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.).

## CONCLUSION

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).  This case is ripe for summary judgment because there is no genuine issue of fact as to the Plaintiff's claims and Defendants are entitled to judgment as a matter of law.

Based on the foregoing, Defendants respectfully request that this court consider treating this Special Report as a Motion for Summary Judgment and enter judgment in favor of Defendants.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL

*/s/ Bettie J. Carmack*
Bettie Carmack (CAR-132)
Assistant Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 353-5305 (T)
(334) 353-8400 (F)
Bettie.Carmack@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have on this January 10, 2020 electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of same to Phillip Guy Piggott, Esq. – Counsel for the Medical Defendants.  I further certify that I have mailed a copy of the foregoing to the following non-CM/ECF participants:

**Robert Thomas Conrad**
**AIS# 226791**
**Holman Correctional Facility**
**Holman 3700**
**Atmore, AL 36503**

*/s/ Bettie J. Carmack*
Bettie Carmack (CAR-132)