IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT THOMAS CONRAD            :
     Plaintiff,                   :
                               :
vs.                             :          CIVIL ACTION 17-00107-TFM-N
                               :
JEFFERSON DUNN, *et al.*,       :
     Defendants.                 :
                               :

## REPORT & RECOMMENDATION

Plaintiff Robert Thomas Conrad, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that summary judgment should be **GRANTED** in favor of all Defendants and that Plaintiff Conrad's action against Defendants be **DISMISSED** with prejudice.

Furthermore, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the Court's intention to **recommend the granting of summary judgment** for Defendant Terry Edwards who has not answered this complaint to date.

I.    **Summary of Factual Allegations**.[1]

A. **Complaint.**

Plaintiff Conrad alleges that members of the Alabama Department of Corrections Emergency Response Team ("CERT Team") used excessive force against him on November 9, 2016, when the CERT team entered B-Dorm at approximately 6:30 a.m. and immediately began assaulting and harassing inmates.[2]  (Doc. 1 at 5).  In his complaint, Conrad alleges that he was hit in the head, while lying face down on his stomach with his hands behind his back – in compliance with the CERT Team's orders.  (Doc. 1 at 6). Specifically, he claims:

> I was hit in the back of the head and told to turn over, when I did so, another C.E.R.T. member made the statement, "He isn't one of them", and I was told to turn back over."

(Doc. 1 at 6).  Conrad alleges he heard other inmates in the dorm "screaming and hollering for help" after he was hit.  (Id.).  He claims he was "traumatized, stressed, and depressed" due to the "unnecessary use of force" that left him in fear.  (Id.).  He further claims as the CERT team exited B-Dorm, they allegedly made the "threatening statement, 'When we come back we are going to beat some more of yall ass too."  (Id.).

---

[1]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riveria Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[2]    Conrad claims the CERT Team made "statements like: 'Where the GD's, Crips and Bloods at now', 'Aryan Brotherhood and Nations where yall at', 'on C.E.R.T. We will beat your Ass', Yall Bitches and Fuck Niggers stood up the other day Standup now' . . . 'Yall stabbed Warden Davenport and Killed Officer Bettis, pull something out now on C.E.R.T. we will beat your Ass.'" (Doc. 1 at 5-6).

Plaintiff Conrad alleges that the force used on November 9, 2016 was precipitated by an incident that occurred on November 7, 2016. According to Conrad, on November 7, 2016, members of the CERT Team, as well as other correctional officers, entered B-Dorm to conduct an institutional count of the inmates. (Doc. 1 at 5). On that date, inmates had placed "makeshift tents" on their beds to "gain some space from the inmate he shares the 5'x 6' living area with", and officers ordered inmates to remove the tents. (Id.). Conrad claims while the inmates removed the tents, one of the CERT Team members "aggressively" broke a stick from inmate Quandarian Faulkner's bed which "resulted in a reaction from the C.E.R.T. Members, Correctional Officers present and the Inmates, after a brief stillness, the count was conducted and the C.E.R.T. TEAM Members and Count Team exited the dorm." (Id.). Conrad explains:

> Approximately two days later on November 9, 2016, at approximately 6:30 a.m. over 50 members of the Alabama Department of Corrections C.E.R.T. Team, entered Bravo Unit armed with their Riot Gear (helmets with face shields, neck collar, body vest, shields, while at least One-Hundred (100) of the One-Hundred and Fourteen (114), inmates assigned to Bravo Unit was sound asleep, and immediately assaulted the inmates like they were animals, without provocation, because the majority of the inmates were harmlessly asleep, after about 35 to 45 minutes of assaulting the inmates, the C.E.R.T. Team members, placed plastic restraining tyes[sic] on the inmates to lay face down on their beds while other C.E.R.T. Team members was parading up and down Bravo Unit still assaulting and harassing the inmates. . . .

(Doc. 1 at 5) (alterations in capitalization).

Plaintiff Conrad is suing Defendants[3] for multiple constitutional violations, including excessive force, assault and battery, failure to protect or intervene, and denial of medical

---

[3]    Conrad originally named as defendants in this action, Alabama Department of Corrections Emergency Response Team, Nurse 1, Nurse 2, Nurse 3, Nurse 4, and Cubicle Officer assigned to Cubicle 1. (Doc. 1). "As a general matter, fictitious party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738

care.  Conrad seeks "$200,000 against each liable Defendants; Compensatory, Punitive, Declaratory and Injunctive Relief; Trial by Jury; State Law Claims of Assault & Battery; Slander; Harassment and such other relief as the Law and this Court Deem just."  (Doc. 1 at 17).

### B.  Defendants' Answers and Special Reports.

The defendants have answered the suit denying in full the allegations against them and filed special reports in support of their positions.[4]  (Docs. 1, 17, 19, 23, 38, 39, 63, 64, 89, 90, 103, 104, 119-122).  As part of their special report, Defendants have submitted pertinent prison documents which include the November 9, 2016 Incident Report, Use of Force Report, Duty Officer Report, I&I Investigative Report, disciplinary records, medical records, and defendant officers' affidavits. (Doc. 39).

The submitted Incident Report provides details of the Nov. 9 search, as well as facts leading to the incident, stating:

> On November 7, 2016, the Southern CERT members entered B-Dormitory and ordered all inmates to remove sticks and tied up blankets from their beds.  The inmates refused to comply and became very hostile and aggressive toward the CERT members.  The inmates gathered in a threatening and intimidating manner around the CERT members stating, "This is 2016, and we run this, slavery is over with, we already done killed one of y'all." Several unidentified inmates were observed with handmade knives in their possession.  The CERT members were able to exit the dormitory without incident.  The inmates with handmade knives were later

---

(11th Cir. 2010); see also CSX Transp., Inc. v. United Transp. Union, 236 F. App'x 562, 563 n.1 (11th Cir. 2007) ("the Federal Rules do not authorize suit against fictitious parties"), cert. denied, 552 U.S. 1243, 128 S. Ct. 1475, 170 L. Ed. 2d 297 (2008); Featherstone v. Home Oil Co., 2011 U.S. Dist. LEXIS 139102, 2011 WL 5978774, at *1 n.4 (S.D. Ala. Nov. 8, 2011) (subject to a limited exception, "fictitious party practice is not permitted in federal court").  Accordingly, these defendants were terminated from the suit on April 13, 2017.

[4]      To date, Defendant Terry Edwards has not answered this suit, despite being granted an extension to file the same.  (Doc. 108, 121).    Accordingly, he is not a party to this motion.

identified by the CERT members through IMAS. On November 9, 2016, at approximately 6:35 a.m., the North Central, South Central, and Southern Team CERT Teams entered B-Dormitory to arrest the suspects. . . . All inmates were given orders to report to their assigned beds, lie down, and place their hands behind their back. The following inmates failed to comply with the orders given: . . . . The CERT Team used force to include impact weapons and physical force on the [noncompliant] inmates to get them to comply with the orders given . . . . The [noncompliant] inmates were arrested and escorted to the health care unit for medical assessments. . . .

(Doc. 39-1 at 3).  The CERT Team's Nov. 9 search resulted in the confiscation of thirty (30) handmade knives and eleven (11) inmates were charged with failure to obey a direct order of an ADOC employee and allowed to remain in population pending the disciplinary action, while twenty-one (21) inmates, were transferred to segregation pending disciplinary actions for failing to obey a direct order, gathering in a threatening or intimidating manner, and unauthorized possession of a weapon or device that could be used as a weapon (as these inmates were identified as participants in the Nov. 7 incident). (Id. at 4).

Defendants admit that Conrad was not a suspect in the November 7, 2016 incident and contend that no force was used against Conrad on November 9, 2016.[5]  (Doc. 39 at 8).  Defendants claim:

While at least 32 inmate names are listed in either ADOC Incident Report, the Use of Force Investigat[ion] Report or theDuty Officer Report, none of them list inmate Conrad as a participant of the incident.  There is further no indication from any of the named Defendants that any of them directly spoke to and/or touched inmate Conrad, much less punched him in the back of the head as inmate Conrad self-servingly alleges. . . . Conrad was not taken to Holman's HCU, nor examined [on Nov. 9], because he was not part of the incident and no force was used against him.  The Defendants specifically state that Conrad was never implicated in the incidents, nor was force used against him at any point during the episodes.

---

[5]     Reference to the November 7, 2016 and November 9, 2016, incidents subject of the report may hereinafter be referred to as the Nov. 7 and Nov. 9 incident, respectively.

(Doc. 39 at 8-9).

On November 10, 2016, the day after the incident, at approximately 1:30 p.m., Conrad filed a sick call request for medical treatment, stating:

> I was hit across the back of the head by one of the Cert team members and need to see if anything [] is wrong. I have been getting dizzy on and off and having headaches on and off. I put Ice on it but I want to get check.

(Doc. 17-1 at 6). The request was received by Nurse Gray (a nonparty to this action), who notified Officer Johnson to bring Conrad to the health care unit for further evaluation. (Id. at 6-7). Conrad was examined by Nurse Wall at 5:10 a.m. on November 11, 2016 for complaints of headaches and dizziness. (Id. at 8). Conrad showed no signs of confusion, visual changes, loss of consciousness, temple tenderness, weak hand grip, abnormal gait, or edema. (Id. at 8-9). The assessment revealed Conrad suffered a bruise to the back of his head which was "tender to touch", and Conrad was prescribed Ibuprofen (400 mg, twice a day for a week) for the discomfort. (Id. at 9). All subsequent visits to the health care unit were completely unrelated to head pain or trauma and relate to a previously broken ankle. (See 17-1 – 17-10). As such, Defendants deny the allegations of denial of medical care asserted against them in this action.

**C. Motion for Summary Judgment**.

After review of the pleadings, the Court ordered that Defendants' Answers, Special Reports, and exhibits (Docs. 1, 17, 19, 23, 38, 39, 63, 64, 89, 90, 103, 104, 119, 120, 121, 122) be treated as a motion for summary judgment. (Doc. 106, 123). After being advised that the granting of the motion would represent a final adjudication of the action, Plaintiff Conrad was provided an explanation of Rule 56 of the Federal Rules of Civil Procedure and was instructed to inform the Court in writing of his desire to continue the litigation of

the action.  (Doc. 106).  To date, Plaintiff Stanton has not responded to the motion for summary judgment, despite being granted an extension of time to respond.  (Doc. 117).

Accordingly, this motion for summary judgment is now ripe for consideration.

## II.    Summary Judgment Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. Garczynski, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III.    Analysis.

### A. Immunity Defenses.

To the extent Plaintiff is proceeding against the correctional officer defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." Id. (citing Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  Accordingly, the correctional officer defendants in this action, all of whom were employed by the State of Alabama Department of Corrections at the time of the incidents alleged in the complaint, are immune from suit in their official capacities. See Parker v. Williams, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), overruled on other grounds in Turquitt v. Jefferson Cnty., 137 F.3d 1285 (11th Cir. 1998) ("[S]uits against an official in his or her official capacity are suits against the entity the individual represents."). Thus, the officer defendants, in their official capacities, are entitled to summary judgment as a matter of law.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  While there is no doubt

that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in <u>Hudson</u> and <u>Whitley</u>." <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). As to the remaining claims, officer defendants are entitled to qualified immunity unless Plaintiff can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. <u>See</u> <u>Belcher v. City of Foley, Ala</u>., 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether this action identifies any constitutional violation.

### B. Supervisory Liability.

Under § 1983, holding a defendant liable solely for the actions of a subordinate or an employee is not recognized as a viable theory of liability. <u>Monell v. Dep't of Social Servs</u>., 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Moreover, when the underlying actions of a subordinate or employee caused no constitutional harm, liability cannot be imposed on the supervisor, employer, or governmental entity for its allegedly related policy. City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).

The record evidences that Defendants Dunn, Culliver, Mitchell, Raybon, Smith, Vignolo and Kidd were not present at Holman's B-Dorm on the morning of November 9, 2016, and did not participate in the incident subject of this complaint.[6] Conrad has failed to allege facts showing or indicating that the actions, be it a policy or custom put in place by the defendants, caused the excessive use of force on him by the CERT team on Nov. 9. Consequently, Conrad has failed to state a cause of action against Defendants Dunn,

---

[6]    Defendants Dunn, Culliver,Raybon, Scarborough, Smith, Mitchell, Kidd, and Vignolo assert the following by personal affidavit:

1. Jefferson Dunn declares that he was not present at Holman on November 9, 2016 (Doc. 89-3);
2. Grantt Culliver declares that he was not present at Holman on November 9, 2016 (Doc. 39-25).
3. Terry Raybon declares that he did not report to work until 8:00 a.m. on November 9, 2016, and was not present during the Nov. 9 incident in B-dorm (Doc. 39-13);
4. Gary Scarborough declares that he was not present during the Nov. 9 incident, and this is supported by the Duty Post Log (which confirms Scarborough was transporting another inmate to the Dothan Eye Clinic during the time of the incident subject of this complaint) (Doc. 39-15);
5. Otis Smith declares that he, Commander of the Central CERT team, was not involved in the Nov. 9 incident or present at Holman on Nov. 9 and neither was the Central CERT team. (Doc. 103-1);
6. Phillip Mitchell declares he was not present during the Nov. 9 incident (Doc. 39-4).
7. Ashley Kidd declares that she was not present during the Nov. 9 incident in B-Dorm, as she was assisting with the institutional shakedown of female employees entering the facility and supervising the institutional count (Doc. 39-22);
8. Timothy Vignolo declares that he was not present during the Nov. 9 incident because he was instructed by the CERT team to exit B-dorm and provide security in the main hall (Doc. 39-23).

Culliver, Raybon, Kidd, Scarborough, Smith, and Vignolo. It is, therefore, recommended that summary judgment be **GRANTED in favor of Defendants Dunn, Culliver, Raybon, Kidd, Scarborough, Mitchell, Smith, and Vignolo** as to all claims asserted against them.

### C. Claims Under 42 U.S.C. § 1983.

Plaintiff Conrad proceeds pursuant to 42 U.S.C. § 1983. "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that the named defendants, as employees of the Alabama Department of Corrections and its contracted medical provider, are state actors for purposes of this action. Thus, to establish his asserted claims, Stanton must establish that the named defendants, personally, acted to deprive him of a constitutional right.

Plaintiff Conrad claims that Cynthia Stewart, Darryl Fails, Nathan McQuirter, Danny Fountain, Jermaine Bullard, John Pryor, Jesse Stanford, Steve Terry, Dominic Whitley, David Dennis, James Griffin, Bradley Walker, Ernest Duren, William Streeter, Charles Arthur, Captain Jeffery Baldwin, Aaron Lewis, Demetrius Fleeton, Michael Harrison, Timothy Robinson, Samuel Snelson, Daryl Brown, Omar Parker, Jesse Wilson, DeJour Knight, Mallorie Mixon, Alfie Pacheco, Anthony Hadley, Harry Finklea, Antonio McClain, Larry McCovery, Marcus Gaston, Teddy Jones, Greggory Patterson, Terry Edwards, Corbin Tunstall, Clifton Sanders, Jasper Luitze, Jason Norris, and Cordaro

Melton are liable for assault and battery, excessive force, failure to protect or intervene, and denial of medical care.

He also alleges that Nurses Ashley Wall and Jonathan Langford are liable for denial of medical and inadequate treatment.

The Court will now address Plaintiff Conrad's claims in turn.

**1. Excessive Force**.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). In order to establish an Eighth Amendment excessive force claim against the defendants, Conrad must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); see also Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience").

"[W]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; see also Skrtich v. Thornton, 280 F.3d 1295,

1300 (11th Cir. 2002). Factors relevant to this determination include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Skrtich, 280 F.3d at 1300.  When considering these factors, courts afford "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance."  Fennell v. Gilstrap, 559 F. 3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

"In an action pursuant to § 1983, a plaintiff may recover damages for monetary loss, physical pain and suffering, mental and emotional distress, impairment of reputation, and personal humiliation." Thompson v. Sec'y, Florida Dep't of Corr., 551 F. App'x 555, 556-557 (11th Cir. 2014) (citing Slicker v. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000)). "But, '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury....'" Id. at 557 (quoting 42 U.S.C. § 1997e(e)). "To satisfy § 1997e(e), a prisoner must allege physical injury that is more than *de minimis*, but the injury need not be significant." Id. (citing Harris v. Garner, 190 F.3d 1279, 1282, 1286-87 (11th Cir.1999) (concluding that ordering a prisoner to "dry shave," without more, did not satisfy § 1997e(e)'s physical harm requirement), reh'g en banc granted, vacated, 197 F.3d 1059 (11th Cir.1999), reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000) (en banc)").  Overall, "[c]ompensatory damages under § 1983 may be awarded only for actual injuries caused by the defendants' illegal conduct and cannot be based on the abstract

value of the constitutional rights that were violated." <u>McKissick v. Comm'r, Georgia Dep't of Corr.</u>, 587 F. App'x 567, 573-574 (11th Cir. 2014) (citing <u>Slicker</u>, 215 F.3d at 1230-31.

Turning to Plaintiff's Eighth Amendment claim, Conrad alleges that the defendants hit him in the back of the head and ordered him to turn over.  After determining Conrad was not one of the suspects from the Nov. 7 incident, the defendants instructed Conrad to turn back over and lie face down on his bed.  Conrad claims he was "traumatized, stressed, and depressed" because of his fear of the officers' presence but fails to describe a single physical injury.  Based on the medical records, the Court concludes that Conrad suffered a bruise on the back of his head and had a headache, both of which resolved with prescribed Ibuprofen.  Accordingly, the Court determines that Conrad's injury in *de minimis* and falls short of establishing an Eighth Amendment violation for excessive force. <u>Cf.</u>, <u>Smith v Salter</u>, No. 18-11622, 2019 U.S. App. LEXIS *7-8 (11th Cir. Nov. 6, 2019) ("There is, of course, no requirement that a plaintiff suffer 'some arbitrary quantity of injury' for his claim to survive summary judgement.  But the extent of a prisoner's injuries can shed light on the amount of force that was used against him, and here the fact that Smith suffered no real harm indicates that Brown's single push was a de minimis use of force.") (internal citations omitted)).

The medical records before the Court contain no evidence to support an objectively serious injury.  Indeed, there is no indication of a concussion, chronic migraines, blackouts, blurry vision, continued dizziness, nor any serious physical or permanent injury. The records are completely devoid of any objective medical data supporting a serious injury, and Conrad alleges none in his complaint.  While Plaintiff is not required to show serious injury in addition to unnecessary and wanton infliction of pain to establish his

claim, he must show that the alleged wrongdoing was objectively harmful enough to rise to the level of a constitutional violation.  Hudson v. McMillian, 503 U.S. 1, 8-10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); see also Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) ("[R]eject[ing] the notion that 'significant injury' is a threshold requirement for stating an excessive force claim'", the Supreme Court has noted that while de minimis uses of force, absent exceptional circumstances, do not violate the constitution, de minimis injury does not necessarily bar a prisoner's excessive-force claim.").  In Hudson v. McMillian, the Supreme Court explained:

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. . . . That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

Id. at 8-10 (internal quotations and citations omitted).  Thus, the relevant inquiry under the objective prong of Hudson is whether the force applied was objectively harmful enough to establish a constitutional violation.  Furthermore, courts "must . . . give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (citations omitted).

In the current action, the parties describe B-Dorm as a hostile, threatening, and unsafe environment.  The record evidences that it housed gangs, gang leaders, and was known to be violent environment.  It is also evident that the inmates housed in B-Dorm had erected "tents" throughout the dormitory making visual sight difficult and had

accumulated numerous handmade weapons.  It is also undisputed that when the CERT

Team entered B-Dorm on Nov. 7, they were surrounded by more than thirty openly defiant

and violent inmates who threatened their lives and wielded knives and broom handles.

(Doc. 39 at 16).   Consequently, it is not unreasonable that the CERT team, on Nov. 9,

would act with haste, assertiveness, and even forcefulness to restore order to B-Dorm, to

effectively arrest the needed suspects from the Nov. 7 incident.  With knowledge of the

reigning violence in B-Dorm and understanding of the total situation at hand, it cannot be

said that the defendants' simultaneous order to turn over and a single hit to the back of

the head, was "applied . . . maliciously and sadistically to cause harm."  503 U.S. at 7.

Instead, the record denotes that any force used was as part of "a good faith effort to

maintain or restore discipline" in a dormitory that had arguably become ruled by inmates,

unsafe, and uncontrollable.  Id.  Accordingly, Conrad's allegations that the "hit" caused

him "trauma, stress, or depression" cannot be viewed as cruel and unusual punishment,

nor can it be viewed as objectively harmful enough to rise to the level of a constitutional

violation.  See Al-Ameen v. Chapman, 2013 U.S. Dist. LEXIS 135777 (M.D. Ala. Aug. 30,

2013) (where plaintiff, who had 15 stitches in his neck and had his hands cuffed behind

his back, alleged that the defendant punched him very hard in the back of his head with

his fist in the infirmary, the Court held that the act of striking the defendant once time on

the back of his head, causing no injury and necessitating no treatment, was not an action

"repugnant to the conscience of mankind");  see also, Thorton v. Fauver (In re Bayside

Prison Litig.), 2010 U.S. Dist. LEXIS 124624, *18, 2010 WL 4916716 (D.N.J. November

18, 2010) (finding that the inmate's pain and swelling of the pinky finger for two days after

the officer hit his left hand with a stick was a de minimis injury inasmuch as the swelling

17

was only for a couple of days, and there was no lasting pain or physical distress or restriction even though the pinky finger was slightly deformed); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.1997) (finding that a bruised ear which lasted for three days was a de *minimis* injury); Nolin v. Isbell, 207 F.3d 1253, 1258 n. 4 (11th Cir.2000) (bruises received during an arrest were a de *minimis* injury); McDonald v. Neal, CA No. 13-0128-CG-M, 2013 U.S. Dist. LEXIS 172822, 2013 WL 6410402 (S.D. Ala. Dec. 9, 2013) (finding the allegations of an officer poking the plaintiff with a nightstick, slapping him two to three times across the face, and shoving him into the wall did not present a physical injury); Brown v. Croce, 967 F.Supp. 101, 104 (S.D.N.Y.1997) (finding that two slaps to the face with no injury resulting were *de minimis* ); Harris, 190 F.3d at 1286-87 (finding a "dry shave" was not a physical injury that was more  than *de minimis* ); Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir.2010) (finding that "the injuries that [plaintiff] complain[ed] of—including the vague injuries to his back, the scrapes and marks on his knees and legs, the lack of personal items, the lapse of time in reordering medication, the window-cleaning assignment, and the discontinuance of his pass for showers twice a day—amount[ed] to *de minimis* physical injuries" thereby barring damages for mental anguish and suffering), cert. denied, 562 U.S. 1009, 131 S. Ct. 517, 178 L. Ed. 2d 382 (2010); Mobley v. Gresco, 2011 U.S. Dist. LEXIS 81136, *6-8, 2011 WL 3163159 (N.D. Fla. July 1, 2011) (finding the claim of "pain and suffering" did not allege an injury); Osterback v. Johnson, No. 2:97-cv-314-FTM-16DNF, 2003 U.S. Dist. LEXIS 25987, 2003 WL 25571396, at *6 (M.D. Fla. June 2, 2003) (finding the plaintiff's "slight weight loss (11 pounds), nausea, back pain, a sinus condition, appetite loss and headaches allegedly 'exacerbated by the poor living conditions'" did not satisfy § 1997e(e)'s physical injury requirement), aff'd, 112 F. App'x 4

(11th Cir.2004); Wilkins v. Gaddy, 559 U.S. at 38, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."))"). Accordingly, conclusory allegations of pain, in the absence of further evidence of injury, justifies the conclusion that the use of force on the prisoner was minimal. Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Thus, Plaintiff's excessive force claim fails as a matter of law, and Defendants are entitled to summary judgment.

### 2.  Failure to Protect.

Plaintiff Conrad claims that the named CERT Team defendants that entered B-Dorm on November 9, 2016, as well as supervisory officials Culliver, Stewart, Raybon, Mitchell, Kidd, Scarborough, Vignolo, Dunn, and Fails failed to protect him, in violation of the Eighth Amendment, from the excessive force used against him on November 9, 2016.

A prison official violates the Eighth Amendment when he or she acts with deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "An officer who is present at the scene [of an altercation] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008). But, an officer may only be liable for

failing to protect if the officer was in a position to intervene yet failed to do so.  Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000).

As the undersigned has concluded that no reasonable jury would conclude that excessive force was used against Plaintiff in this case, it stands to reason that no reasonable jury could find that any defendant was liable in his or her position for failing to intervene.  If no excessive use of force takes place, an officer has no duty to intervene. Crenshaw v. Lister, 556 F. 3d 1283, 1294 (11th Cir. 2009); McBride v. Rivers, 170 F. Appx. 648, 658 (11th Cir. 2006) (defendant could not be held liable for failing to intervene after court determined no excessive force had been used).  Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on Plaintiff's failure to intervene claims.

### 3.  Denial of Medical Care.

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." McDaniels v. Lee, 405 F. App'x 456, 458 (11th Cir. 2010) (citing Mann v. TaserInt'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)).  To satisfy the first objective element, Plaintiff must prove his condition was, in fact, a serious medical need.  "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Pourmoghani-Esfahani v. Gee, 625 F.3d

1313, 1317 (11th Cir.2010) (internal quotations omitted).   "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three subparts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists*, and* [ ] must also draw the inference'") (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811, (1994)); see also Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010).

In his complaint, Plaintiff Conrad asserts the conclusory allegation that he was denied medical care.  (Doc. 1 at 10-15).  While a hit to the back of the head could produce symptoms that qualify as serious medical condition, the action of a single "hit" alone is not enough to establish a serious medical need.  Instead, courts must look to the seriousness of the condition at the time of the events alleged in the complaint.  Reading Plaintiff's complaint in a light most favorable to him, the Court finds that Plaintiff has not alleged an objectively serious medical need.  The record is void of any allegation or indication that Conrad showed signs of swelling, bleeding, confusion, imbalance, extreme pain or any other visible signs on Nov. 9 demonstrating an obvious need for medical treatment.  Additionally, and importantly, Conrad fails to allege he ever sought medical treatment on Nov. 9.  Accordingly, there are no facts in the record to suggest that Conrad suffered an objectively serious medical need and no evidence or allegations that any defendant knew or should have known he needed medical treatment and denied him medical treatment.

Furthermore, the record confirms that Conrad received medical care for his symptoms of "off and on" headaches and dizziness. The medical records evidence that Conrad filed a sick call request the following day, November 10, 2016 and received a medical exam and prescription medication for his alleged headache on November 11, 2016. Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) ("When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."). In order for this delay in medical treatment to amount to deliberate indifference, Plaintiff must show that the delay worsened his medical condition, Goebert v. Lee Cnty., 510 F.3d 1312, 1327 (11th Cir. 2007) ("In cases that turn on the delay in providing medical care, rather than the type of medical care provided...[w]here the prisoner has suffered increased physical injury due to the delay, [the Eleventh Circuit] ha[s] consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay."). Conrad fails to carry this burden as the record confirms Plaintiff's condition was not affected by the delay. There are no facts to suggest that Conrad's pain increased, that his symptoms worsened, and the record supports that the prescribed Ibuprofen alleviated his headaches (as Conrad did not seek further medical treatment for these or similar complaints).

Consequently, Conrad has not established, and the record refutes his claim, that Defendants purposely denied him medical care on Nov. 9. Moreover, there is no "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Mann, 588 F.3d at 1307. Thus, there are no genuine issues to the facts of record, and the undersigned recommends that summary judgment be GRANTED

in favor of the medical Defendants Wall and Langford and all officer Defendants and that the claims against them be dismissed.

### D. State Law Claims.

In his complaint, Plaintiff asserts various state law claims, including assault and battery and the conclusory allegations of slander and harassment. (Doc. 1 at 17).

While the Court has federal question jurisdiction over the § 1983 claims, it has supplemental jurisdiction over his state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1569 (11th Cir. 1994)). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney, 370 F.3d at 1089.

Because this Court has determined that all of Plaintiff's federal claims are due to be dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." Baggett, 117 F.3d at 1352. As a result, Plaintiff's remaining state law claims are dismissed to allow Plaintiff to pursue his claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law and neither judicial

economy nor fairness to other litigants supports retaining jurisdiction over Plaintiff's state law claims in this instance.

### E.  Request for Declaratory and Injunctive Relief.

In addition to monetary relief, Conrad requests a declaratory judgment and injunctive relief.  A remedy for declaratory relief is created by 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory relief is by its nature prospective." McGee v. Solicitor Gen. for Richmond Cnty., Ga., 727 F.3d 1322, 1325 (11th Cir. 2013). That is, it is "[i]n contrast . . . [to] a claim for money damages [that] looks back in time and is intended to redress a past injury." Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). Thus, to have standing to seek declaratory relief, a plaintiff "'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1265 (11th Cir. 2001)).  "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).  A remote possibility of a future injury occurring is not adequate to meet the "actual controversy" requirement for declaratory relief. Id. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs, 622 F.2d 807,

821-22 (5th Cir. 1980), <u>cert. denied</u>, 450 U.S. 964, 101 S. Ct. 1479, 67 L. Ed. 2d 613 (1981).

Conrad has not made a specific showing (or even an allegation) that there is any likelihood he will be subjected to unlawful conduct by a named Defendant in the future. <u>See</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 104, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (merely asserting that one may again be subject to unlawful conduct does not generally give rise to standing to demand prospective relief). Thus, Conrad's claim for declaratory relief fails "to satisfy the threshold 'case or controversy' requirement of article III and the 'actual controversy' prerequisite of 28 U.S.C. § 2201" and, therefore, is subject to dismissal. <u>See</u> <u>Emory</u>, 756 F.2d at 1552.

Similarly, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief if the party alleges . . . a real and immediate — as opposed to a merely conjectural or hypothetical - threat of *future* injury." <u>Church v. City of Huntsville</u>, 30 F. 3d 1332, 1337 (11th Cir. 1994) (emphasis in original). A review of Conrad's complaint reveals no allegation or claim of future harm. Accordingly, Plaintiff's claim for injunctive relief is due to be dismissed.

## IV.   Notice of Judgment Independent of the Motion.

Rule 56 of the *Federal Rules of Civil Procedure* permits the Court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Thus, by filing of this Report and Recommendation, the Court notifies Plaintiff of its intention to consider a recommendation to the District Judge that he enter summary

judgment, *sua sponte*, in favor of Defendant Terry Edwards on the claims raised against them in this action.

Plaintiff alleges that Defendant Edwards, as a CERT team member, is liable for the use of excessive force, failure to protect or intervene, assault and battery, and denial of medical care. In an effort to determine whether or not Plaintiff carried his burden in establishing a constitutional claim, the undersigned has analyzed the aforementioned claims and concluded there to be no cognizable claim pursuant to § 1983. For the reasons stated in this report, after a review of all relevant facts, it is recommended that summary judgment be entered on behalf of Defendant Edwards and dismissal of all claims against him.

However, Defendant Edwards has not yet answered the complaint (Docs. 108, 112). Consequently, he is not a party to this motion for summary judgment. Given that Plaintiff presents no additional allegations nor provides any differing facts as to his claims against this defendant than those that have been analyzed *supra*, the Court maintains that its findings of facts and conclusions of law regarding the claims presented against Defendant Edwards would be essentially identical to those discussed in this report. Accordingly, Plaintiff is hereby put on notice by this report and the analysis of his claims of the Court's intention to consider summary judgment in favor of Defendant Edwards.

Accordingly, within the fourteen days provided for filing objections to this Report and Recommendation, Plaintiff shall show cause, in writing, why the Court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendants Harrison, Mixon, and Edwards on Plaintiff's 42 U.S.C. § 1983 claims.

In responding to this notice, Plaintiff should refer to Fed. R. Civ. P. Rule 56, including the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)   showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Plaintiff cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits, depositions, or other materials set forth in Rule 56(c)(1)(A) — or by citing such evidence already of record in this matter — which set forth facts presented in a form that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case.  If plaintiff fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56 the court will accept the evidence identified above as undisputed, for purposes of evaluating whether the court should grant summary judgment in the defendants' favor.  See Fed. R. Civ. P. 56(e).  Plaintiff's failure to follow the requirements of Rule 56(c)(1)(A) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding District Judge that he enter summary judgment in the favor of the Defendants Harrison, Mixon, and Edwards and enter final judgment in this case without a trial.

## V.   Conclusion.

Plaintiff Conrad has failed to show an Eighth Amendment constitutional violation on the part of any defendant.  Based on the foregoing, the undersigned recommends that

summary judgment should be **GRANTED** in favor of Defendants and that Plaintiff Conrad's action against Defendants be **DISMISSED** with prejudice.

Furthermore, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the Court's **intention to recommend the granting of summary judgment for Defendant Terry Edwards** who has not answered this complaint to date. Plaintiff is afforded the opportunity to include within any objections he has to this report and recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendant Terry Edwards.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and

the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 6th day of February 2020.

/S/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**